With that, we will begin with case number 17-50325, United States v. Gurrola, and we'll hear from Mr. Chapman. Good morning. May it please the court, my name is Sean Chapman. I'm here on behalf of defendant appellant Samuel Velasco Gurrola. I'd like to start by telling the court that the main issues that I see on appeal that I think mandate reversal here have to do with the admission of hearsay statements under the co-conspirator exception and the admission of unduly prejudicial and irrelevant prior acts or subsequent acts, and that's what I'd like to focus on initially. The court knows that the appellant was convicted of multiple counts of conspiracy to kill in a foreign country and conspiracy to cause travel in foreign commerce and commission of murder for hire. The conspiracy alleged in the indictment, though, is very specific in terms of its dates, and the court needs to keep this in mind during my arguments and when reading these briefs. The conspiracy occurred, according to the government, between September 2008 and November 22, 2008, and another important fact is that the object of that conspiracy alleged in the indictment was to undermine a state criminal prosecution against the appellant. That is how this case was charged, and that should have been the framework of the evidence presented at trial, and it was not. It went way beyond that. Let me start by talking about other act evidence. The government's theory was that a state court sexual abuse prosecution was the motivation for the appellant to commit murder for hire in this case, and there's no question that the fact of that state prosecution is relevant and it was necessary for the government to prove within the motive exception of 404B. However, the court allowed evidence that went way beyond the fact of the prosecution, the fact that the appellant was exposed to a great deal of prison time, and the fact that Ruth Segreda, one of the victims, was a critical witness in that case, which is strange because during jury selection, the court actually notified or indicated its intent to limit that evidence, and that's when it stated, only the fact that it was filed, I'm not going to get into details. Only the fact that there was a pending sexual assault case against Mr. Velasco, not that we're going to get into the details of what was involved. Despite that, a tremendous amount of evidence that was irrelevant and prejudicial was put before the jury on this issue. The government actually called the prosecutor, the state court prosecutor to testify. She essentially vouched for the credibility of the state court prosecution by saying that she'd reviewed and screened over 10,000 cases. The implication was, therefore, they must have had a good case against Mr. Velasco. She also talked about how she was reluctant to dismiss the case after Ruth Segreda was killed. Thirteen documents from the sexual assault docket were admitted. A copy of the indictment was read to the jury. This goes way beyond Judge Briones' very reasonable initial ruling that only the fact of the case would come into evidence. To make matters worse, the prosecutor asked Carlos Segredo, Ruth Segredo's ex-husband, questions that assumed guilt in the state court prosecution in front of the jury. For example, the prosecutor asked Carlos if he was aware that the defendant had sexually abused the victim. Then he asked him a question about shortly after it, the sexual offense happened. He was allowed to say that Ruth Segredo was accusing Mr. Velasco Gorilla of raping her four-year-old daughter. Again, I understand that the government needed to bring in the existence of this prosecution, but it should have been clearly limited. It should have been – Ruth Segredo was a key witness in this case, and she died. Velasco Gorilla was looking at a significant amount of prison time if he was convicted in this case and the exact amount of years, and that would have been sufficient. We didn't need to get into this prejudicial evidence that in a case that's ugly enough as it is to essentially paint the picture of my client as a sexual child abuser in addition to the horrendous charges he was already charged with. It was completely gratuitous and unnecessary. In the government's – Counsel, sorry to interrupt. In the government's theory of the case, the existence of this – and correct me if I'm wrong. The existence of this criminal prosecution they say was – they allege was the motivating factor for the subsequent murders. Is that right? It's sort of in retaliation for the – Ruth's participation in the criminal prosecution. Is that generally right? I agree that that's their theory, and that's why I also agree that it was appropriate to introduce the existence of that prior prosecution. It's just that the prosecution went way beyond Judge Brionis' limiting instruction. Basically, he said we're just going to offer evidence of the existence of the sexual assault case. We're not going to get into any more details than that. And then they did over and over again, and those details really had nothing to do with this case. All the jury needed to hear was about the framework of that prosecution and the exposure by Mr. Girola to it, and that's my concern. And I don't see how the – when hearing that apparently Mr. Velasco Girola is also a sexual child abuser in addition to the fundamental charges he was charged with, I don't see how he could get a fair trial under those circumstances. It was so prejudicial. I mean when you say that you agree, though, that the fact of the prosecution should have been allowed in, of course that would have included the allegations, right? That he was a sexual abuser of a four-year-old child. It would have included what Judge Brionis said, the fact of a sexual assault, and that she was a key witness. But getting into details beyond that, I don't think – Judge Brionis intended and I don't think was necessary for the jury and should have been circumscribed under Rule 403. I didn't read Judge Brionis' remark as being a definitive ruling. I mean he – obviously he learned more about the case as it went along, and so it was just up to him to decide when the evidence came in whether he was going to let it in. I mean don't you think that's the way it worked? I understand your point, Your Honor. As a defense attorney, listening to him say that during trial, though, I think it could be reasonably interpreted as a ruling. And even if it wasn't, the 403 aspect of this, of the prejudicial impact on the jury of all this gratuitous information, was overwhelming under U.S. v. Beach on the second prong of that test to allow prior access of 403 analysis. Yeah, I understand that argument, yeah. And if he – if you're correct about that – I'm not saying that you're not – then I would respectfully submit that he erroneously applied the 403 analysis in Beach. And you object – you objected. I mean when the evidence came in that you believe – you believed was inconsistent with the prior ruling of the judge, Mr. Garola's attorneys – I don't know if it was you or someone else – objected. Is that right? Yes, Your Honor. There were pre-trial motions filed on the co-conspirator statements and the prior acts, and that's record on appeal 2287 and 172. And as you know, under Federal Rule 103, once the court rules on those issues definitively, those issues are preserved whether or not a trial attorney actually makes a specific objection after each question, which he did a lot. He did. But he did preserve those prior to trial by moving pre-trial, and then also during the course of the trial he objected almost continuously. So the other act that I wanted to talk about was the Sylvia Mendez kidnapping, which occurred two weeks after the end of the conspiracy in this case. It occurred on December 8, 2002 – or 2008. And she was allowed to testify about these horrific details of her kidnapping. They called her sister, Hilda Ramirez, who was allowed to say that they threatened to cut up Sylvia Mendez in little pieces if the ransom wasn't paid, that they made her strip naked when she delivered the ransom money. I mean the question I have for the court is when you hear this evidence that has nothing to do with the conspiracy and happened after the conspiracy, what contextual or substantive connection does it have to the murders alleged in the indictment? It has none. It's not intrinsic to this – the accident alleged in the indictment. The indictment alleges a conspiracy to kill in a foreign country. This has to do with kidnappings that occurred after the fact. They're not intrinsic at all. They're completely gratuitous, completely prejudicial, and under Beecham, second prong, they're so prejudicial that even if somehow they qualified as part of a conspiracy, they're still inadmissible under 403. Just so we're clear, when you, at the beginning of your argument, when you talked about the conspiracy extending from one day to another, you said September 2008 to November. Did you say a specific date in November? Yes, I did. November 22, 2008. And what is the basis in the record? I mean this may be obvious, but it's just helpful for me to know.  The indictment. Okay, thank you. And the absence in the indictment of any allegations of kidnappings or anything else. I mean the indictment was seven counts related to murder for hire. That's it. The government charged in a separate indictment some of the same defendants alleging kidnappings and a drug conspiracy, but they never sought to join these two cases. And I think part of the problem was that Judge Briones presided over both cases, and he possibly confused and conflated some of the factual issues so that evidence from the conspiracy and the case that wasn't going to trial was improperly admitted in this case. Another act that was admitted that was incredibly prejudicial and irrelevant was that in 2009, after the completion of the conspiracy, Alon Garcia's murder was improperly admitted. There didn't seem to be any logical basis for that admission of that evidence. The government claimed in its brief that it was needed to explain unavailability. How about just having the case agent say he's dead? They went beyond that, and they actually called a forensic pathologist to say how he died, that it was execution-style, entry of bullet wounds. This is all after the conspiracy is over. And I guess the implication, although there was no evidence of it, was that maybe Velasco Girola was the one that killed him. I don't know, but it was completely gratuitous, prejudicial, and unnecessary. I mean the main point of that testimony was to show that Alon was an assassin, and that's the way he made his living, and to corroborate the fact that it's likely he was the shooter here. With respect, Your Honor, I understand that, but I don't understand how it's relevant that a forensic pathologist would be offered to show autopsy reports and show the manner of the killing. It just went beyond what was needed. And I respectfully tell the court that it was too prejudicial. It shouldn't have been presented to the jury. All right. You have reserved time for a vote. Yes. Thank you. Thank you. Mr. Stelmach? Yes, Your Honor. You may have placed the court. Well, with a hundred-page brief, we've come down to three matters, and I'm never very good at predicting exactly what's being raised. The first thing that was raised was that the evidence of the underlying sexual assault wasn't sufficiently circumscribed by the court. In all of his presentation, he didn't say any detail of the sexual assault. No details of the sexual assault were admitted. The court's ruling was – I interpret the court's ruling as don't get into the details of the crime, and none of the details of the crime were discussed. The indictment was redacted as to any details. It was just what the charges were. The important part of it is what are the statutes and penalties involved? What time was he facing? He was facing 20 years. The timeline of the continuances of the proceeding was very important. There were 13, 14 continuances, and as the case continued to be continued, the urgency for the last-minute role to kill Ruth increases. There was testimony that she was an important outlier witness. Well, that goes to the reason as to why he wants her murdered. The overall objective of everything in the conspiracy is not going to jail for the sexual assault. All of these intricate murders, luring her into Juarez by killing her father and robbing the safe, and then when that didn't work, killing her sister and bringing her down. All of it was to avoid imprisonment as the motivation for the entire scheme. The prosecutor didn't vouch for anything that was said. The fact that Avalos said that Ruth wanted the case to proceed, well, that's because she had a sense of urgency, and her sense of urgency in getting the case to proceed was Velasco Barola's sense of urgency in murdering Ruth. They brought up that it should have been excluded at the meeting at the shoe stand when he's trying to recruit Arturo, and he says that he wants her killed because he was accused of raping her daughter. Well, those are the words. He's saying what Samuel Velasco said, that that's why he was being recruited into the scheme. I don't think you'll find, looking at the record, that there was prejudice. The other points he's making are that sometimes in the references to the sexual assault, sometimes the prosecutor didn't say alleged or charged, but most of the time she did. Most of the time she said alleged sexual assault, charged sexual assault. A couple of times that she didn't. As to the kidnapping, the Sylvia Mendez kidnapping, at the meeting, at the very first meeting, it said that he's recruiting Alan to be the murderer, and he says you're going to murder Francisco, Ruth's father, and the money from the safe will be used, and if everything goes right, I'm going to give you victims for kidnapping. That was the reward for a successful murder. Not only that, the testimony was that the money from the safe paid for all of the kidnapping vehicles, the weapons, everything that was involved in the kidnapping. So the scheme was that Francisco's murder would be a reward by giving him kidnappings, and those kidnappings, the money that he would make would be the reward for his murder. Now, the evidence of the Martinez kidnapping, it did occur two weeks after the murder, and you could say, well, in a usual murder conspiracy, the murder ends the conspiracy, but in this case, the object of the conspiracy, and the indictment is not detailed in any way as to what, it doesn't have anything about the sexual assault, it doesn't have anything about the robbery, but as it's developed in the evidence, the payment for the murders is an object of the conspiracy, and it's within two weeks of the indictment. As to Alan Garcia's murder, he's the one who led the murder team, and the testimony was that the murder team was the same as the kidnapping team. His death is part of the criminal story. It completes the story. It also provided the context for Samuel's later confession to Arturo. He paid for Arturo to come back for his son's funeral, and then he made a very detailed confession about what had happened, that they were going to kill Ruth at the father's funeral, but there were officers there and that couldn't be done, and so, well, then they had to kill his sister to bring her down, and that was finally successful. That whole detailed confession, the context of it was the funeral of Alan Garcia, and his death completed the story. As to the statement that came out that he thought that Samuel Velasco Barola had killed his son, that was elicited on cross-examination. That did not come out indirect. Mr. Stelmach, can I ask you about – there are many issues in this case, as you pointed out – can I ask you about the jury instruction regarding the elements of 18 U.S.C. 1958? Yes. That's the – remind me, is that the murder for hire statute? That's the murder for hire statute. Murder for hire statute. Yeah. Was it error not to instruct the jury? I don't think so. And here's the explanation. The elements, as recited by this court's cases, are an agreement, voluntary participation, and an overt act of one of the conspirators. So in the jury instructions, it doesn't say that you have to find an overt act of one of the conspirators. So that's the essence of the claim. But this is a different charge than most charges on this, which end at the agreement. There was an extra point in the charge here that the fourth prong of the charge was that they had to find that the death of each victim resulted from the agreement. So if the jury had to find the death of each victim resulted from the agreement, then it was required to find the ultimate act of any murder conspiracy, the actual murder itself. That's pretty overt. That's my argument that that's the overt act because they had to find the death. You usually don't have to find the death in an agreement to kill, but they added this that they had to find the death. And I think that covers the overt act element. Okay, so as I understand what you said, your argument is that in its totality, the jury instructions actually did effectively ask the jury to find an overt act. The first layer of my argument is it was an act by the death, which is the ultimate overt act. The second layer of the argument in the case I 28J'd, usually I would not cite a case from a district court in Tennessee. But it actually went right down the line of what my argument was, that the Supreme Court cases of Sabani and Whitfield, they're basically saying that if Congress wants to put an overt act element, they'll put an overt act element like a 371 case. If they don't put an overt act element in there, then courts should not put an overt act element. But you do – do you concede that after – Whitfield is 2005. Yes. There are – I mean I'm aware of cases from this court that recite. They cite the elements and then my – Does that mean you can't – does that mean that you're foreclosed by circuit precedent or do you have – is there any way around that? No, I would – because the element itself is not challenged. A reciting of the elements and that's not even a part of the case. It's just a recitation of the elements. So I'm thinking of a case like McCulloch. I don't know if you were thinking of that case. Yes. The 2011 case. McCulloch. Which is a 1958 case which does recite overt act as an element. It does cite an overt act as an element. In your view, is that – well, what I hear you saying – I don't want to put words in your mouth. Are you saying that that's dicta in that case? That's not a part of the holding of the case, the overt act? It's not a part of the holding of the case and it doesn't take into consideration the Supreme Court precedent that if the Congress doesn't put an overt act. Well, right, but we – I mean what I'm getting at is if it's a holding of the case, we're bound by that. Yes. By this orderliness. Well – We can't just overrule it. Well, Whitfield is older than McCulloch though. That's right. So it can't undo McCulloch because it's before. But if you're saying that, well, they didn't use the magic words over an act, but they went further by using the magic words of death, and that's pretty darn overt, then at worst for you it's harmless error beyond a reasonable doubt.  And then as to plain error, it has to be – if jurists of reason will – in that Sixth Circuit case, in that Tennessee case, they said the same thing. They said we have Sixth Circuit precedent that said overt act is an element, but those cases didn't analyze the overt act element in the context of whether Congress wanted it in and the Supreme Court cases. I mean this case didn't involve evidence of just two people kind of going, hey, let's kill this lady. Oh, yeah, sure, that'd be nice, period. Oh, indictment. I mean there was – there's a lot more here. So – And then the last layer too, and what you're getting at is there was an overt act element required for the murders instructed to the jury. And the last – the third and final layer is a netter argument that even if an element is not charged, if there's overwhelming evidence of overt acts, then – or if there's overwhelming evidence of that element, then it could be harmless error. And here there's all kinds of overt acts, including the murders and showing the victim with photographs, the installation of surveillance cameras. There's plenty of overt acts that the jury would have had to have found for the murder in a foreign country which overlapped with the murder for hire. So there's three levels. You don't like the second level, but I think the first part is if the jury had to find the death of the victim, then it had to find an overt act. Anything else? If you don't have any further questions, thank you. All right. Thank you. And we're back to Mr. Chapman. Just on the overt act issue real quickly, that has been case law, as the court has pointed out, for quite a while, U.S. v. McCullough in the Fifth Circuit. And also McCullough cited Blackthorne, which was from the Fifth Circuit case from 2004. Blackthorne was before Whitefield. Am I right? I don't know, Your Honor. 2004. I've got Whitefield right here. It's 2005. I mean, do you agree that Whitefield is inconsistent with Blackthorne? Whitefield says if Congress is silent on whether a conspiracy statute includes an overt act requirement, courts should not read it in. I agree with that. Okay. And the problem that I was talking with Mr. Stelmach about was we have a decision from 2011 called McCullough that recites overt act as an element. And I asked him if that was dicta. What is your view? I don't believe it's dicta. But if I could tell you what I think the primary concern that I have that the government is overlooking is that an overt act instruction or element was given with respect to the first three counts in the indictment but not the last four counts. And they were all conspiracy counts. And so my concern is the jury receiving those instructions believing that some lesser level of proof was required. Okay. So you're – in other words, you are – I think I remember this from your brief. You are making this overt act argument with respect to which counts? Four through seven. Four through seven. And your argument is that the – you heard counsel opposite say the jury was effectively asked to find overt acts. But are you saying that the jury was not asked to find overt act with respect to counts four through seven? Yeah, I don't see how you can make that argument when the first – the instructions in the first three counts, which were also conspiracy counts, required proof of an overt act for essentially the same conduct. I think it's confusing. Why isn't death an overt act? It is an overt act. Okay, well, they were told on the counts four, five, et cetera, that the death of SFV resulted, the death of CSE resulted. Why aren't – why isn't that enough? Because the jury – what the jury's hearing is you have to establish proof of a term, an overt act, something that happened in the first three counts. And in the last four counts, they're not being required to do that. They're being required to agree beyond a reasonable doubt that the death of so-and-so resulted from these acts. I just think that looking at it from their perspective, they're thinking, hmm, I have to find an overt act that exists in count one through three, but I'm not being asked to do that. I mean I agree with you, Your Honor, that murder is an overt act. But it wasn't just my guessing that. They're asked, for you to find Velasco Guerrero guilty of this crime, you must find that the government has proven each of the following beyond a reasonable doubt, one, two, three, and fourth, that the death of RMB resulted, and so on. They have different initials on each one, and that's page 26 of the charge. Why isn't that, at least, even if it could be better phrased, why doesn't that establish harmless error beyond a reasonable doubt? Because, again, with respect, I think it creates confusion when they're looking at the first three counts versus the last four counts. Are we under plain error review on this? What? Are we on plain error review on this point? It's a harmless error analysis. I mean, was there an objection to the instruction? No, you're right. It's a plain error analysis. I didn't object. Well, I didn't try the case, but the trial lawyers objected. But it's – that's a good point. I was applying the wrong standard, but it's more favorable to you, and I still think you're having trouble telling me why it wasn't that. As a trial lawyer, all I can tell you is that – which I primarily am – in my view, if you give a jury instructions on seven conspiracy counts and you tell them – you use the term overt act and the instructions on three of them but not the other four, that's going to create confusion and misunderstanding. Okay. Unless the court needs any further information from me, I'll sit down. Okay. Thank you. Thank you. We appreciate both sides' arguments on this.